IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02466–REB–KMT

SAN JUAN CITIZENS ALLIANCE,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, an agency of the United States, and
UNITED STATES BUREAU OF LAND MANAGEMENT, an agency within the United States
Department of the Interior,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This matter is before the court on Western Energy Alliance's Motion and "Memorandum
in Support of Motion to Intervene" ("Mot.") [1] [Doc. Nos. 11/12], filed October 7, 2013.
"Plaintiff's Response in Opposition to Motion to Intervene by Western Energy Alliance"
("Pltf.Resp.") [Doc. No. 24] was filed on November 12, 2013 and "Defendants' Opposition to
Western Energy Alliance's Motion to Intervene" ("Defts.Resp.") [Doc. No. 23] was filed on
October 28, 2013.  The "Reply in Support of Motion to Intervene by Western Energy Alliance"
was filed on November 21, 2013 [Doc. No. 28].  The matter is ripe for review and
recommendation.

---

[1] Citations to "Mot." are to the Memorandum in Support of Motion to Intervene [Doc. No. 12].

*BACKGROUND*

Western Energy Alliance ("WEA") is a non-profit trade association representing over 400 companies engaged in exploration and production of oil and natural gas. (Mot., Ex. 1, Declaration of Kathleen Sgamma ["Sgamma Decl."], at ¶ 2.) WEA members own, and seek to obtain additional, federal oil and gas leases which the Department of the Interior, Bureau of Land Management ("BLM"), has issued under the Mineral Leasing Act of 1920. (*Id.* )

According to the December 20, 2012 Declaration of Karen Zurek, Chief of Adjudications Minerals in the Colorado Field Office of the BLM: "In order for lands to be considered for an oil and gas lease sale, a corporation or an individual must submit an Expression of Interest (EOI) or the BLM must make a motion to nominate particular lands." *See Citizens for a Healthy Community v. United States Department of Interior, et al.*, Case No. 1:12-cv-01661-RPM (D. Colo. Feb. 13, 2013) [Doc. No. 27, Exhibit B] (attached as Exhibit 1). When an EOI is received by the BLM, a lengthy process is begun through the assigned BLM field office, which includes identifying ownership of the parcel, providing notice to owners, conducting studies on environmental impact and impact on wildlife, notification to the public of the possibility of a lease sale, several comment periods, a protest period, and, if approved, a notice of a public sale. (*Id.* ¶¶ b – l.) The sale is open to the public though an auction, with the highest bidder at auction winning the right to buy the lease. (*Id.* at m.) Two days following the sale, the names and identifying information of the EOI submitters are released to the public. (*Id.* at n.)

WEA alleges that its members

. . . routinely submit EOIs - both directly and through third party brokers - that request the BLM to lease particular parcels of federal land and federal minerals, and participate in federal oil and gas lease sales throughout the country, including

> in Colorado. An EOI expresses to the BLM that a particular company believes a particular tract of federal land or minerals should be leased because it has the potential to produce oil or gas . . . . [WEA] members view their interest in leasing a particular tract as confidential commercial or business information that they do not disclose to the public or to competitors.

(Mot. at 6) (internal citations omitted).

The Freedom of Information Act ("FOIA") provides that a government agency must make its "records promptly available to any person" who has submitted a request that "reasonably describes such records." Title 5 U.S.C. § 552(a)(3). "[T]he basic purpose of the [FOIA] is "to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). Agencies, however, are permitted to retain records that fall into one or more of the exemptions enumerated in the Act. 5 U.S.C. § 552(b). FOIA "is to be construed broadly in favor of disclosure," while "its exemptions are to be narrowly circumscribed." *Trentadue v. Integrity Committee,* 501 F.3d 1215, 1226 (10th Cir. 2007). "The federal agency resisting disclosure bears the burden of justifying withholding." *Id.*

Since 1995, submitters of EOIs have relied on BLM Instructional Memoranda Numbers 95-164 (1995) and 2013-026 (2013), which provide that the identity of an EOI submitter is confidential commercial business information that is exempt from disclosure under Exemption 4[2] of FOIA until two days after the lease sale has occurred. (Sgamma Decl. ¶ 8.). WEA posits that "[t]hese policies appropriately ensure that the submitter is not penalized for expending capital to explore and analyze the suitability of federal lands for development." (*Id.*)

---

[2] Section (b)(4) of the FOIA -- Exemption 4 – provides "(b) This section does not apply to matters that are. . . (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential; . . . ."

3

BLM's willingness to proceed under Exemption 4 with respect to FOIA requests for EOI submitter information changed subsequent to the Order of Senior Judge Richard P. Matsch in *Citizens for a Healthy Community*.  In that Order, Senior Judge Matsch, considered a FOIA request aimed at the identity of an EOI submitter on a parcel located in the Uncompahgre Field Office in Colorado, and held that the confidentiality policy of the BLM allowing for invocation of Exemption 4 to withhold the name of the submitter of the EOI

> . . . runs directly contrary to the purpose of the public sale process.  Competition in bidding advances the purpose of getting a fair price for a lease of publicly owned minerals. Moreover, the identity of the submitter may be relevant to the plaintiff and others who may raise concerns about the stewardship records of that potential owner, a factor relevant to the environmental impact of the proposed sale.

*Id.* at 2.  Senior Judge Matsch granted summary judgment in favor of the FOIA Plaintiffs and ordered the BLM to release the identity of the EOI submitter, including its mailing address and telephone number.

Upon learning of this Order, WEA sought to intervene in *Citizens* for purposes of perfecting an appeal; however, intervention at that late stage was denied by the District Court. The BLM thereafter refused to appeal the Senior Judge Matsch's Order and any appeal of Judge Matsch's order was foreclosed.  (Defts.Resp. at 2.)

This case arises out of a subsequent FOIA request by Plaintiff, San Juan Citizens Alliance ("SJCA"), a non-profit organization in the Four Corners region of Colorado, which is "actively involved in monitoring and scrutinizing energy development, overseeing government decision making and compliance with environmental laws, advocating for cleaner air quality and better stewardship of natural systems, promoting reduced energy consumption, energy efficiency

and renewable energy, and working for improvements to community health." (Compl., [Doc. No. 1] at ¶ 19.)

On February 26, 2013, SJCA submitted a FOIA request to BLM seeking, "The Expressions of Interest submitted for the parcels located in the Uncompahgre Field Office included in the August 2012 Oil and Gas Lease Sale, including information identifying the persons or entities who submitted the Expressions of Interest; and All documents related to the Expressions of Interest listed above." (*Id.* at ¶ 34.) On June 21, 2013, some four months subsequent to Judge Matsch's order in *Citizens* and after the decision to forego an appeal of that order, BLM issued its response, releasing the EOIs that precipitated the February 2013 Tres Rios Field Office ("TRFO") lease sale, including the names of the EOI submitters. The BLM, however, redacted the name of an EOI submitter's client inadvertently contained within the EOI documentation. The BLM stated, "that the release of this information could cause substantial commercial harm to the business should client information be released," citing FOIA Exemption 4, 5 U.S.C. §§ 552 (b)(4). (*Id.* at ¶ 42.) This lawsuit followed.

Before this court is the narrow issue of whether WEA should be allowed to intervene in this action, either as of right or permissively.

*ANALYSIS*

I.    *Intervention of Right*

Fed. R. Civ. P. 24(a) provides

(a) Intervention of Right**.** On timely motion, the court must permit anyone to intervene who:
. . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical

> matter impair or impede the movant's ability to protect its interest, unless existing
> parties adequately represent that interest.

As the Advisory Committee Notes to the 1966 Amendment state, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. . . ."  Fed. R. Civ. P. 24, advisory committee notes (1966 Amendment).  *See also* 6 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, § 24.03[1][c], at 24–26 (2d ed. 1987) ("Although each of the requirements [of Rule 24(a)(2) ] involves distinct issues . . . , all . . . address the same basic question: Will denial of intervention have a significant enough effect on the applicant?").

> The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis
> of the facts and circumstances of each case is appropriate. Although each of the
> three criteria is independent, practical application of Rule 24(a)(2) involves a
> balancing and blending of the independent components. The three criteria are not
> analyzed in a vacuum and, instead, are often applied as a group. The criteria
> should be considered together rather than discretely. Intervention should be
> granted of right if the interests favoring intervention outweigh those opposed. For
> example, a lesser showing of impairment may be required by the court if the
> applicant's interest is very strong. Likewise, intervention of right may be granted
> if the applicant's claimed interest may be significantly impaired by the action,
> even if some uncertainty exists regarding the sufficiency of that interest. The
> inquiry under Rule 24(a)(2) must focus on the particular facts and procedural
> posture of each application.

> 6 MOORE'S FEDERAL PRACTICE, *supra* § 24.03[1][b], at 24–25 (quoted with approval in

*San Juan County, Utah v. United States.* 503 F.3d 1163, 1188(10th Cir. 2007).

> WEA contends that its members devote considerable time and resources identifying

particular tracts for leasing that they submit to the BLM in EOIs, including by evaluating the geology and hydrocarbon potential of unleased tracts.  (Mot. at 2.)  In spite of this preliminary

work, the submitter of an EOI is given no preference at the competitive lease sale and competitors are free to bid against the submitter at the sale.  (Mot., Ex. 1,¶ 6.)

WEA contends that if the identity of the EOI submitter is made known publically, that company's competitors

> . . . gain valuable non-public information.  The competitor may base its auction strategy on the EOI submitter's reputation in the industry, the submitter's known geologic knowledge and prior exploration work, or the submitter's other lease holdings in the area.  A competitor may purchase lease parcels with no interest in developing them in an effort to block or leverage a deal with the EOI submitter who deems the parcel critical to larger development plans.

(Mot. at 3)(internal citations omitted).

Under the BLM procedure at the time of the disclosure request in this case, if an oil and gas exploration company had invested the resources to identify a parcel of land whose mineral rights it wants to bid on, the company had no other practical choice but to file an EOI to get the parcel into the system for a potential sale.  At that point, revealing its identity to the BLM in connection with the EOI was compulsory.

> Pursuant to BLM policy, an EOI must contain: (I) a legal land description of the parcels the party nominates for lease; (2) *the submitter's name or company name with mailing address or telephone number*; and (3) the name and address of any private surface owners (for lands on which the surface rights overlaying federal minerals are in private ownership).

(Sgamma Decl. ¶ 5)(emphasis added).

However, as of October 1, 2013, BLM changed its EOI procedures and currently EOI submitters may withhold identifying information at the time of filing.  (*See* Defts.Resp, Declaration of Darrell Strayhorn, Ex. D, Instruction Memorandum No. 2014-____, dated October 28, 2013.)  The BLM, in part as a result of rulings similar to Judge Matsch's in *Citizens*

*for a Healthy Community,* now treats EOI submitter identification as public information, but allows submitters to transmit EOIs fully anonymously.  In explaining the rationale for this change in policy, the BLM set forth its opinion that requiring EOI submitter's identification was unnecessary, stating, "[m]ost often, the BLM uses submitter information [on an EOI] to contact submitters to clarify the request."  *Id.* at 2.  Further, the Instruction Memorandum states, "[t]he BLM finds that the name of an EOI submitter is of limited value in the development of a competitive oil and gas lease sale and will no longer require it to be submitted with an EOI."  BLM also plans to publicize all EOI submissions on its website as of January 1, 2014. (Defts.Resp at 3-4).

Therefore, the only issue present in this case that overlaps WEA's general concern regarding the confidentiality of its members' proprietary exploratory investigation prior to submission of an EOI is the publication of information voluntarily, even if inadvertently, provided to the BLM as part of an EOI submission - precisely the situation in this case.

### A.   *WEA's Interest Relating to the Property or Transaction.*

In *San Juan Cnty.*, a case heard *en banc* by the Tenth Circuit, several conservation groups, referred to collectively as SUWA, sought to intervene in a federal quiet-title action brought by the county plaintiff against the United States, the Department of Interior, and the National Park Service.  503 F.3d 1163.  Although the case arose in the context of a quiet-title action, the positions of SUWA in relation to the plaintiff and defendant in *San Juan Cnty. vis à vie* the position of WEA in relation to the Plaintiff and Defendant in this case are remarkably similar.  The intervenors in both cases are a group of entities whose members' interests will allegedly be damaged by the outcome of a dispute in which one party is the federal government.

In *San Juan Cnty.,* the County sued to quiet title to a right-of-way the county claimed for an

unpaved and ungraded jeep trail that ran in and out of Canyonlands National Park. *Id*. at 1167.

The National Park Service sought to place gates across the trail which would limit vehicular

access and which would also restrict access to the right of way.  The County sought to remove all

gates and signs restricting access to its right of way in any manner. *Id*. at 1168.  SUWA, who

sought to have the trail closed to vehicular traffic altogether for environmental reasons, applied

to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) and permissively under

Fed.R.Civ.P. 24(b). *Id.*

The Tenth Circuit first addressed the meaning of "interest in the property or transaction"

and dispensed with the long held DSL test espoused in *Utah Ass'n of Counties v. Clinton*, 255

F.3d 1246, 1251 (10th Cir.2001) (quoting *Coalition of Ariz./N.M. Counties for Stable Econ.*

*Growth v. Department of Interior*, 100 F.3d 837, 840 (10th Cir.1996)).  The so-called DSL test

mandated a finding that the interest displayed by the proposed intervenor be "direct, substantial,

and legally protectable." *San Juan Cnty.*, 503 F.3d at 1193.  Stating that the DSL test had missed

the point, the Tenth Circuit said that "[t]he central concern in deciding whether intervention is

proper is the practical effect of the litigation on the applicant for intervention." *Id.*

Ultimately, the Tenth Circuit rejected application of a rigid test and instead requires that

The applicant must have an interest that could be adversely affected by the
litigation. But practical judgment must be applied in determining whether the
strength of the interest and the potential risk of injury to that interest justify
intervention.

*San Juan Cnty., Utah,* 503 F.3d at 1199.

Much like the environmental interest recognized by the Circuit as to SUWA, the business interest in protecting WEA members' research into and interest in a particular location for oil and gas exploration from disclosure is manifest.  *See San Juan Cnty.* at 1999.  Such information is a legally protectable interest and disclosure of that interest certainly could result in the submitter having to pay an increased price at the public sale, among other economic damages. The findings of Judge Matsch in *Citizens for a Healthy Community* were not that WEA did not have a valid and recognizable interest in the confidentiality policies of the BLM to protect the identity of the submitters of EOIs from disclosure under the previous policies requiring identifying information, but rather that in balancing that interest against the interest of the public in "getting a fair price for a lease of publicly owned minerals," the public's interest was entitled to more weight.  *Id.* at 2.

> **B.**  ***Impairment of WEA's Ability to Protect its Interest***

Given the change in BLM policy forgoing the compulsory production of submitter identification in connection with an EOI submission, the only information in the possession of the BLM identifying a submitter would have been voluntarily provided.  "[F]inancial or commercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 [only] if it is of a kind that would customarily not be released to the public by the person from whom it was obtained."  *Critical Mass Energy Project v. Nuclear Regulatory Com'n*  975 F.2d 871, 879, 298 (D.C. Cir. 1992)(en banc); *but see International Broth. of Elec. Workers Local 68 v. Denver Metropolitan Major League Baseball Stadium Dist.*, 880 P.2d 160, 166 (Colo. App.1994) (Court stated "the *Critical Mass* test appears to be irreconcilable with the intent of the Colorado Open Records Act and the concurrent strong

10

presumption in favor of disclosure," but allowed for continued viability depending on voluntary nature of the disclosure.); *Denver Publishing Co. v. University of Colorado*, 812 P.2d 682, 684 (Colo. App. 1990) (it would be inconsistent with the public policy underlying the Colorado Open Records Act to conclude that records are entitled to a blanket nondisclosure exemption simply because the custodian agency placed them with a confidential personnel file).

Since this case arose before the new BLM policy went into effect and when certain types of information was compelled in connection with an EOI, the application of *Critical Mass* may be diluted.  That said, however, WEA's concerns under the new policy are on point with *Critical Mass*.  Under the new policy, BLM makes clear that it will not be holding voluntarily provided EOI submitter information as confidential.  In fact, the new policy provides that all EOIs will be published on the BLM website.  (Defts.Resp, Strayhorn Decl., Ex. D at 1.)  Once an EOI submitter voluntarily provides its identification to the government, then it is, *ipso facto*, agreeing to release of the information to the public and thereafter "there is no reason for Exemption 4 to apply because the submitter no longer intends the information to be secret."  *Herrick v. Garvey,* 298 F.3d 1184, 1193 -1194 (10th Cir. 2002)(internal quotes omitted).

Resolution of this discrete case, wherein the BLM invoked Exemption 4 to withhold the names and identifying information of an EOI submitter's voluntary disclosure of client information under the now repealed and replaced policy compelling identification of EOI submitters, will not have any impact on the current policy allowing submitters to control their own confidential information by remaining anonymous with respect to EOI submissions.  All an EOI submitter need do under the new policy to protect its economic interest in confidentiality is

**not** disclose its – or its client's - identity; an action completely within the control of the EOI submitter itself.

This court concludes that while WEA members' interest in protecting their highly valuable research and development concerning the mineral production rights owned by the federal government satisfies the condition of Rule 24(a)(2) that it claim an interest relating to the property or transaction which is the subject of the action, as a practical matter, the disposition of this unique case will not impair or impede WEA's ability to protect that interest."

### C. *Representation of WEA's Interest by Existing Parties.*

Finally, a prospective intervenor need make only a minimal showing to establish that its interests are not adequately represented by existing parties. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (U.S.D.C. 1972) (The requirement of Rule 24(a)(2) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.") *See also Nat'l. Farm Lines v. Interstate Commerce Commission*, 564 F.2d 381, 384 (10th Cir.1977) (in case challenging constitutionality of Interstate Commerce Act and subordinate regulations, representation of intervenor individual common carriers by the Interstate Commerce Commission was inadequate because "the governmental agency [was] seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention . . . ."); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1248 (10th Cir. 2001) ("the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.")

Before the enactment of the new BLM policy discussed herein, the court would have been inclined to say that BLM's multi-faceted obligations would render it unable to represent

12

WEA's members' interests adequately.  However, as a policy matter, the interests of WEA and the BLM are now aligned.  The BLM, attempting to satisfy the interests of the public and to comply with the order of Senior Judge Matsch in *Citizens,* and in recognition of the confidentiality concerns of EOI submitters, has remedied the conflict formerly faced by WEA members by a simple solution: the submitter may choose to withhold all its identifying information as part of an EOI submission.

As noted, any decision in this case will be limited to the facts at issue in one particular EOI submission submitted under the prior policy and will not involve any of the greater policy issues which are the concern of WEA.  To the extent WEA has any interest in this case, which this court specifically rejects, the BLM can adequately represent those interests, as it attempted to do when it redacted the name of the EOI submitter's client in the first instance.

Because WEA has failed to show either that its interests will be impaired or impeded by disposition of this case in its absence or that the Defendant herein cannot adequately represent its interests to the extent such interests exists, intervention of right must be denied.

## II.     *Permissive Intervention*

Fed. R. Civ. P. 24(b)(2) provides

> (b) Permissive Intervention.
> (1) In General. On timely motion, the court may permit anyone to intervene who:
>     (A) is given a conditional right to intervene by a federal statute; or
>     (B) has a claim or defense that shares with the main action a common question of law or fact.

*Id.*  Permissive intervention may be granted under the Rule when: (i) the motion is timely, (ii) the applicant's claim or defense have a question of law or fact in common, and (iii) intervention will

not delay or prejudice the adjudication of the rights of the original parties.  *Utah v. Kennecott Corp.*, 232 F.R.D. 392, 398 (D. Utah 2005); *see also City of Stilwell,Oklahoma v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996).

"[WEA] seeks to intervene to argue that the identities of the submitters of EOIs, and the identity of the clients of those EOI submitters, are protected under Exemption 4 to FOIA."  (Mot. at 9.)  This case, however, arose before the BLM changed its policy, and will be limited to its facts given the revision of the BLM policies.  This case concerns both the *former* policy of the BLM and the unique situation where an EOI submitter inadvertently included the client's name on an email copy.  WEA seeks to litigate a far broader issue than that found within the factual basis of the case and to protect an interest that is arguably now moot as well.  Intervention by WEA would unreasonably complicate this case involving a narrowly-defined set of facts and a FOIA request pursued under a now defunct policy of the BLM.

For all the reasons set forth herein, WEA, who does not claim to be either the EOI submitter on the FOIA request at bar, nor the inadvertently withheld client, does not meet the basic requirement that its claim share a common question of law or fact with the main action.  Therefore, this case is not appropriate for permissive intervention.

Wherefore, it is **RECOMMENDED** that

Western Energy Alliance's "Motion to Intervene" [Doc. No. 11] be **DENIED**.

## ADVISEMENT TO THE PARTIES

**Within fourteen days after service of a copy of the Recommendation**, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 20th day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge