**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-02466-REB-KMT

SAN JUAN CITIZENS ALLIANCE,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, an agency of the United States,
UNITED STATES BUREAU OF LAND MANAGEMENT, an agency within the United
States Department of the Interior,

     Defendants.

---

## ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

     This matter is before me on the following: (1) the defendants' **Motion for
Summary Judgment** [#42][1] filed February 26, 2014; (2) the **Plaintiff's Cross-Motion
for Summary Judgment and Response To Defendant' Motion for Summary
Judgment** [#45] filed March 24, 2014.  The defendants filed a response [#47] to the
motion of the plaintiff, and both the plaintiff and the defendants filed replies [#48 & #49]
in support of their motions.  I grant the motion of the defendants and deny the motion of
the plaintiff.

### I.  JURISDICTION

     I have jurisdiction over this case under 28 U.S.C.  XX 1331 (federal question)
and 5 U.S.C § 552(a)(4)(B) (Freedom of Information Act).

---

[1]  "[#42]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2]   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine issue of fact.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).

In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show by tendering depositions, affidavits, and other competent evidence that summary judgment is not proper.  *Concrete Works*, 36 F.3d at 1518.  All evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse*

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* FED. R. CIV. P. 56(a). *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that any hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

***Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).  However,

conclusory statements and testimony based merely on conjecture or subjective belief

are not competent summary judgment evidence.  ***Rice v. United States***, 166 F.3d

1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999).

## III.  FACTS

The plaintiff, San Juan Citizens Alliance (SJCA), submitted a request under the

Freedom of Information Act (FOIA), 5 U.S.C. § 552, to the United States Bureau of Land

Management (BLM).  The Western Environmental Law Center made the submission on

behalf of SJCA. [#45-1][3].  The SJCA sought documents known as expressions of

interest (EOI) submitted to the BLM as part of a sale of oil and gas leases announced

by the BLM.  As part if its response to the FOIA request, the BLM released documents

related to an EOI submitted by Mark A. O'Neal and Associates (O'Neal).  Out of the 38

pages produced, one of these pages was O'Neal's cover e-mail introducing the EOI.

O'Neal's client was copied via e-mail on the EOI, and the cover page included the e-

mail address of O'Neal's client.

The sole issue in this case is whether the e-mail address of O'Neal's client was

withheld properly from disclosure by the BLM under Exemption 4 of the FOIA. The

redacted document disclosed by the BLM in response to the FOIA request is shown in

Exhibit 10 [#42-10] to the BLM motion for summary judgment.

After receiving the FOIA request of SJCA and other requests, the BLM sent a

letter [#42-3] to Helen Hoffpauir, an O-Neal representative, concerning the FOIA

requests.  Under regulations of the Department of Interior, the BLM must notify private

---

[3] I reference exhibits included with the motions for summary judgment by the docket number of
the exhibit, e.g., [#45-1].

parties about potentially confidential commercial or financial information which may be disclosed in response to a FOIA request.  O'Neal responded and objected to the release of O'Neal's information.  [#42-4].  The BLM requested more information from O'Neal.  [#42-5].  O'Neal objected to release of its client's e-mail address, which it equated with a release of the identity of its client.  [#42-7 & #42-8]. In an e-mail sent June 14, 2013, O'Neal noted that the "EOI in question was submitted in 2011, when the BLM was operating under the former regulations that assured submitter confidentiality until after a lease sale was completed." [#42-8], p. 3.  In its final response, BLM redacted the e-mail address of O'Neal's client under Exemption 4 of the FOIA.  [#42-9 & #42-10].

SJCA filed an administrative appeal.  During that appeal, the BLM sought additional information from O'Neal relevant to Exemption 4.  SJCA sought to compel a response to it's appeal from the BLM.  *Affidavit* [#45-1], ¶ 10.  The BLM did not issue a decision, and SJCA then filed this case.  *Id.*, ¶ 11.  The information sought by SJCA has not been released.

### IV.  FOIA & EXEMPTION 4

The FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  ***Dep't of Air Force v. Rose***, 425 U.S. 352, 361 (1976).  Congress recognized that an open government ensures accountability through transparency, and that an informed citizenry is "vital to the functioning of a democratic society."  ***N.L.R.B. v. Robbins Tire & Rubber Co.***, 437 U.S. 214, 242 (1978). "FOIA is . . . a means for citizens to know what their Government is up to. This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy."  ***Nat'l Archives & Records Admin. v. Favish*** , 541

U.S. 157, 171 - 172 (2004) (internal citations and quotations omitted).  FOIA's plain language requires that an agency of the federal government disclose documents and information to any person, except when the document falls under a specifically enumerated exemption.  *See* 5 U.S.C. § 552(a)(3)(A) ("each agency, upon any request for records…shall make the records promptly available to any person.").  FOIA exemptions "must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act."  ***Vaughn v. Rosen***, 484 F.2d 820, 823 (D.C. Cir. 1973), ***cert. denied***, 415 U.S. 977 (1974).

The burden is on the government to justify its decision to withhold or redact documents.  ***Johnson v. United States Department of Justice***, 739 F.2d 1514, 1516 (10th Cir. 1984); ***Lacefield v. United States***, 1993 WL 268392 at *2 (D. Colo. March 10, 1993).  To meet this burden, the government may not rely on conclusory assertions, but "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." ***Lacefield***, 1993 WL 268392 at *2 (quoting ***Perry***, 684 F.2d at 126).  It may do so by providing affidavits or declarations that specify "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." ***Military Audit Project v. Casey***, 656 F.2d 724, 738 (D.C. Cir. 1981); ***see also Badalamenti v. United States Department of State***, 899 F.Supp. 542, 546 (D. Kan. 1995).  Such affidavits are afforded a presumption of good faith, absent concrete evidence to the contrary.  ***See SafeCard Services, Inc. v. Securities & Exchange Commission***, 926 F.2d 1197, 1200 (D.C. Cir. 1991); ***Board of County***

***Commissioners of Kane County v. Department of the Interior of the U.S.***, 2007 WL

2156613 at *6 (D. Utah July 26, 2007).  In any FOIA action challenging an agency

decision to withhold records, the district court reviews de novo the agency's decision not

to disclose.  ***Herrick v. Garvey***, 298 F.3d 1184, 1189 (10th Cir. 2002).

Exemption 4 of FOIA exempts from release under FOIA "trade secrets and

commercial or financial information obtained from a person and privileged or

confidential."  5 U.S.C. § 552(b)(4).  Exemption 4 is unique because it requires the

government to account for the interests of third parties by asking for their input when it

decides to release or withhold information in response to FOIA requests. See 43 C.F.R.

Part 2, Subpart F; ***National Parks & Conservation Ass'n v. Morton***, 498 F.2d 765,

767 (D.C. Cir. 1974) ("The exemption . . . is intended to protect interests of both the

Government and the individual.").  Information falls within Exemption 4 only of the

information is (1) a trade secret or (2) information which is (a) commercial or financial,

(b) obtained from a person, and (c) privileged or confidential.  ***Anderson v. Department

of Health and Human Services***, 907 F.2d 936, 943 - 945 (10th Cir. 1990).

### V.  ANALYSIS

In the present case, there is no contention that the e-mail address at issue is a

trade secret.  In addition, there is no dispute that the e-mail address was obtained from

a person, Mark A. O'Neal and Associates.  Thus, the dispute focuses on whether the e-

mail address is commercial or financial information and whether it is privileged or

confidential.

### A.  Commercial or Financial Information

A private entity may show that information is commercial or financial, for the

purpose of Exemption 4, by showing that it has a "commercial interest" in the

information at issue. ***Baker & Hostetler LLP v. U.S. Dept. of Commerce***, 473 F.3d 312, 319 (D.C. Cir. 2006). In its affidavit [#42-15], and in its administrative submissions to the BLM, O'Neal maintains survigrously that the identity of its client, which can be discerned from the e-mail address in question, is commercial information. Referring to itself as MAO, O'Neil represents: MAO is a land services firm that is employed by oil and gas companies as an intermediary broker for the express purpose of maintaining the confidentiality of its client's area of interest from the public and its competitors. Ensuring client confidentiality by conducting its leasing efforts in a discrete manner is an integral aspect of the services MAO provides. *Affidavit* [#42-15], ¶ 6. "Clients hire MAO as a lease broker to avoid disclosure of their identity, which may have a significant economic and competitive impact upon the lease parcels of interest to the client. Specifically, the disclosure of this information may result in greater competition and increased lease acquisition costs." *Id.*, ¶ 7.

In this context, the only reasonable conclusion is that O'Neal has a commercial interest in the identity of its client, including the e-mail address in question. Thus, I conclude that this information is commercial information.

### B.  Privileged or Confidential Information

Examining Exemption 4 in ***National Parks & Conservation Ass'n v. Morton***, 498 F.2d 765 (D.C. Cir. 1974), the court held:

> (C)ommercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

498 F.2d at 770 (footnote omitted).  Applying the ***National Parks*** definition in ***Critical Mass Energy Project v. Nuclear Regulatory Comm'n***, the D.C. Circuit held that information submitted voluntarily is confidential under Exemption 4 if it is "of a kind that would customarily not be released to the public by the person from whom it was obtained." 975 F.2d 871, 879 (D.C. Cir. 1992) (*en banc*).  This is a reduced threshold for demonstrating that information is confidential.  The ***Critical Mass*** court found that the government has an interest in encouraging the voluntary submission of information. 975 F.2d at 879.  In addition, the ***Critical Mass*** court found that when information is submitted voluntarily, "the presumption is that [government's] interest will be threatened by disclosure as the persons whose confidences have been betrayed will, in all likelihood, refuse further cooperation."  ***Id***.

As SJCA notes, many courts have criticized the voluntary versus involuntary distinction made in ***Critical Mass***.  ***See, e.g., N.Y. Public Interest Research Group v. EPA***, 249 F. Supp. 2d 327, 335-36 (S.D.N.Y. 2003) ("Adoption of the ***Critical Mass*** standard would result in too liberal a test for confidentiality . . . There is no reason to believe that Congress intended to distinguish between voluntary and compelled submissions."); ***Comdisco, Inc. v. Gen. Servs. Admin.***, 864 F. Supp. 510, 517 (E.D. Va. 1994) ("It is doubtful that the Fourth Circuit would be persuaded to embrace the ***Critical Mass*** standard with respect to voluntary submissions."); ***Dow Jones Co., Inc. v. F.E.R.C.,*** 219 F.R.D. 167, 178 (C.D. Cal. 2003) ("Although defendant urges this Court to adopt ***Critical Mass,*** the Court believes that the holding therein is not consistent with Ninth Circuit jurisprudence, nor with the purposes of Congress in enacting FOIA, which mandates the courts to favor disclosure to serve the public interest. The Court also notes that the test set forth in ***Critical Mass*** has not been adopted by any Circuit other

than the District of Columbia Circuit and has been the subject of criticism by some courts.").

Nevertheless, in *Utah v. U.S. Dept. Of Interior*, the United States Court of Appeals for the Tenth Circuit said: "The first step in an Exemption Four analysis is determining whether the information submitted to the government agency was given voluntarily or involuntarily." 256 F.3d 967, 969 (10th Cir. 2001) (citing *Critical Mass*, 975 F.2d at 878 - 879). In *Utah*, the parties agreed that the information in question was submitted involuntarily. Thus, the court applied the *National Parks* test rather than the *Critical Mass* test. to date, the Tenth Circuit has not applied the *Critical Mass* test to information found to have been submitted voluntarily.

In the present case, O'Neal was not required to submit the e-mail address in question with its EOI. Thus, the e-mail address was submitted voluntarily, though possibly inadvertently. On that basis, the government argues that the relaxed standard of *Critical Mass* is applicable here. The SJCA argues that the Tenth Circuit has not explicitly adopted the *Critical Mass* standard and that it should not be adopted, based on the reasons cited by the courts who have criticized *Critical Mass*.

Based on the record in this case, I find and conclude that the BLM has shown that release of the e-mail address would cause substantial harm to the competitive position of O'Neal, the person from whom the information was obtained. Thus I conclude that BLM has satisfied the *National Parks* test. Of course, the result would be the same under the relaxed standard of *Critical Mass*. Because the *Critical Mass* standard would not lead to a different result, I need not determine if that standard applies in this case. The government has satisfied the more stringent *National Parks* test.

Under the substantial harm prong of **National Parks**, the party seeking to invoke Exemption 4 must show "actual competition and the likelihood of substantial competitive injury" caused by the release of the information at issue. **Utah v. U.S. Dept. Of Interior**, 256 F.3d at 970. Conclusory and generalized allegations of substantial competitive harm are not sufficient. *Id*. "(A)ctual economic harm need not be proved; evidence demonstrating the existence of potential economic harm is sufficient." *Id*. In *Utah*, affidavits from two individuals describing competitors and substantial competitive injury were found to be sufficient. *Id*. at 970 - 971.

In its affidavit [#42-15], and in its administrative submissions to the BLM, O'Neal consistently has said that disclosure of the identity of its client, which can be discerned from the e-mail address in question, is likely to cause commercial injury to O'Neal. Referring to itself as MAO, O'Neal says: "MAO's business relationship with its client and all other oil and gas companies depends upon the confidentiality afforded to each company's identity and business prospects by MAO." *Affidavit* [#42-15], ¶ 11. "MAO is a privately held company. The value of the company is based upon our ability to execute according to client expectations. The release of MAO's client identity will permanently harm our relationship with the client and substantially undermine industry confidence in MAO's ability to function as a discrete and confidential professional land services company." *Id.*, ¶ 12. "If BLM releases MAO's client email address, it is expected that MAO will suffer substantial economic and financial harm from lost business, resulting from the client's inability to use MAO as an intermediary to protect its operational interests and from MAO's severely damaged reputation as a reliable and discrete land services broker." *Id.*, ¶ 13. O'Neal painted essentially the same picture

when providing information to the BLM about the FOIA requests tied to the EOI. [#42-4, #42-7 & #42-8].

In the view of SJCA, the O'Neal affidavit [#42-15] and related documents do not establish substantial competitive harm.  SJCA contends that the affidavit is conclusory and fails to specify a realistic risk of competitive harm.  Releasing the e-mail address, SJCA asserts, will identify a party likely to participate in the sale of a lease, but that information will not be of substantial assistance to the unidentified competitors of O'Neal in the world of oil and gas leases.  SJCA notes that there is no indication that this information will permit competitors to undercut bids made by O'Neil's client.  Further, SJCA notes that competition in bidding "advances the purpose of getting a fair price for a lease of publicly owned minerals." *Citizens for a Healthy Community v. U.S. Dep't of Interior*, No. 12-cv-01661-RPM (D. Colo. February 13, 2013).  SJCA also notes that O'Neal states that release of the e-mail address could result in the loss of a client, may increase leasing costs, and would allow others to benefit from the front-end research of its client.  These contentions, SJCA contends, are vague and are not sufficient to show substantial economic harm.

While O'Neal does address in its submissions competition for leases on government land, the primary harm it asserts is loss if the particular client at issue here and, possibly, other clients who learn of the breach of client confidentiality.  The O'Neal affidavit is not conclusory.  It identifies specific relevant facts, specific economic harms, and the mechanism by which release of the information in question is likely to cause those economic harms.  As in *Utah*, here the statements of individuals who operate the business of O'Neal describing the competitive environment and likely substantial competitive injury are sufficient to establish substantial economic injury.  *Utah*, 256 F.3d

at 970 - 971.  Further, although O'Neal has not shown that it is certain to suffer

economic harm if the information is released, it has shown a significant potential for

economic harm.  the showing is sufficient for the purposes of Exemption 4.  *Id*. at 970.

## VI.  CONCLUSION & ORDERS

Exemption 4 of the FOIA exempts from release under FOIA "commercial or

financial information obtained from a person and privileged or confidential." 5 U.S.C. §

552(b)(4).  FOIA exemptions must be construed narrowly to provide the maximum

access to information, consistent with the overall purpose of the FOIA.  The burden is

on the government to justify its decision to withhold or redact documents.  In this case,

the government has met its burden to establish that Exemption 4 is applicable to the

information redacted by the BLM.  The evidence in the record shows that the

information in question is confidential commercial information obtained from a person.

Under Exemption 4 of the FOIA, the BLM properly may withhold the information sought

by the SJCA.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the defendants' **Motion for Summary Judgment** [#42] filed February

26, 2014, is **GRANTED**;

2.  That the **Plaintiff's Cross-Motion for Summary Judgment and Response

To Defendant' Motion for Summary Judgment** [#45] filed March 24, 2014, is

**DENIED**;

3.  That the claim of the plaintiff under the Freedom of Information Act, stated in

the complaint [#1], is **DISMISSED** with prejudice;

4.   That **JUDGMENT SHALL ENTER** in favor of the defendants, the United

States Department of the Interior, an agency of the United States, and the United States

Bureau of Land Management, an agency within the United States Department of the Interior;

    4.  That the defendants are **AWARDED** their costs to be taxed by the clerk of the court under FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

    5.  That this case is **DISMISSED**.

Dated September 30, 2014, at Denver, Colorado.

                **BY THE COURT:**

                Robert E. Blackburn
                United States District Judge